UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:11CR192 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ANDREW CONSTANTINOU, et al. | : | April 25, 2014 |

**GOVERNMENT'S OPPOSITION TO DEFENDANT CONSTANTINOU'S**
**MOTION FOR HEARING ON JURY MISCONDUCT**

The government hereby responds to defendant Andrew Constantinou's post-trial motion

for a hearing on alleged jury misconduct (Docket No. 519).   The governing authority, Federal

Rule of Evidence 606(b), this Court's Local Rule 83.5, and the alternate juror's failure to raise

these concerns anytime before the verdict, understandably discourage—if not outright bar—the

kind of post-verdict fishing expedition Constantinou now wants the Court to embark upon.

For the reasons stated below, the Court should deny the motion.   The Court would be

acting well within its broad discretion to deny the motion and, furthermore, to have no further

contact with the alternate juror, except to remind him of his obligations under Local Rule 83.5.

Moreover, the government requests that the Court maintain its order that the parties have no

further contact with the alternate juror or any other jurors.

**I.      GOVERNING LEGAL PRINCIPLES**

"[T]he sanctity of the jury room is among the basic tenets of our system of justice.

Inquiries into the thought processes underlying a verdict have long been viewed as dangerous

intrusions into the deliberative process.   They undermine the finality of verdicts and invite fraud

and abuse." *Attridge v. Cencorp Div. of Dover Techs. Int'l, Inc.*, 836 F.2d 113, 114 (2d Cir.

1987).   It is therefore well-established that courts must exercise great care and caution before

1

conducting any proceedings that would invade the sanctity of jury deliberations.

As the Supreme Court has cautioned:    "Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process.    Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct."  *Tanner v. United States*, 483 U.S. 107, 120-121 (1987) (internal citation omitted); *see also McDonald v. Pless*, 238 U.S. 264, 267-68 (1915) (cautioning, of post-verdict inquiries, that "[j]urors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict . . . to the destruction of all frankness and freedom of discussion and conference").    The Second Circuit has repeatedly reached the same conclusion.    "[P]ost-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts." *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (internal quotations and citations omitted.

To that end, Congress enacted Fed. R. Evid. 606(b), which provides in full:

During an Inquiry Into the Validity of a Verdict or Indictment.

(1) Prohibited Testimony or Other Evidence.    During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.    The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) Exceptions.    A juror may testify about whether: (A) extraneous prejudicial

2

information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form.

*Id*.   Rule 606(b) "serves three principle purposes: to promote free and uninhibited discourse during deliberations, to protect jurors from attempts to influence them after trial, and to preserve the finality of verdicts."   *Attridge*, 836 F.2d at 116.

Consistent with controlling caselaw and Fed. R. Evid. 606(b), this Court's Local Rule 83.5 also discourages inquiries into the jury deliberative process or "the effect of anything . . . on another juror's vote."   It provides, in relevant part:

1.   Trial Jurors
. . . .
(b) Jurors have no obligation to speak to any person about any case and may refuse all interviews or requests to discuss the case. Jurors may only speak or write about their own participation in the trial. Jurors may not discuss the deliberations of the jury, votes of the jury, or the actions or comments of any other juror. However, jurors shall report to the Court any extraneous prejudicial information improperly brought to the jury's attention, any outside influence improperly brought to bear upon any juror, or whether the verdict reported was the result of a clerical mistake.

(c) No party, and no attorney or person acting on behalf of a party or attorney, shall question a juror concerning the deliberations of the jury, votes of the jury or the actions or comments of any other juror.

(d) No person may contact, communicate with or interview any juror in any manner which subjects the juror to harassment, misrepresentation, duress or coercion.
. . . .

4. Violations

A violation of this rule may be treated as a contempt of Court. The Court shall have continuing supervision over communications with jurors, even after a trial has been completed.

L.R. 83.5.

Given the very real potential to undermine the sanctity of jury deliberations, the Second

3

Circuit has developed a stringent standard for justifying post-verdict investigation into alleged juror conduct:   the defendant must "come[] forward with 'clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred.'" *Ianniello*, 866 F.2d at 543 (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)). Absent such a showing, no inquiry is necessary.   *See Ianniello*, 866 F.2d at 543 ("The duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality. . . . [H]earings such as the one the appellants request should be avoided whenever possible." (quotations and citations omitted)); *United States v. Sabhnani*, 599 F.3d 215 (2d Cir. 2010) (concluding that district court properly determined that no further investigation was merited where defendant failed to present "'clear, strong, substantial and incontrovertible evidence' of juror misconduct").

The Second Circuit has held that "[w]e are always reluctant to 'haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences.'"   *Ianniello*, 866 F.2d at 543 (quoting *Moon*, 718 F.2d at 1234).   Indeed, "[t]his court has consistently refused to allow a defendant to investigate 'jurors merely to conduct a fishing expedition.'"   *Ianniello*, 866 F.2d at 543 (quoting *United States v. Moten*, 582 F.2d 654, 667 (2d Cir. 1978)).

A district court's handling of alleged juror misconduct is reviewed for abuse of discretion. *See United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011).   The district court is accorded "broad flexibility" because "addressing juror misconduct always presents a delicate and complex task, . . . particularly when the misconduct arises during deliberations."   *Id*. (internal quotation marks and citation omitted).   Because the Second Circuit has recognized "the deeply rooted view

4

that the secrecy of deliberation is essential to the proper functioning of juries," *id.* at 169 (internal quotation marks omitted), "a district court must be careful that it does not itself create prejudice by exaggerating the importance and impact of extra-record information." *Id*. (internal quotation marks omitted).

## II.    THE DEFENDANT IS NOT ENTITLED TO A POST-VERDICT HEARING.

In this case, the defendant has failed to establish a "clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred," as required by the Second Circuit. *See Ianniello*, 866 F.2d at 543.   Assuming that the subject voicemail was in fact left by an alternate juror, neither it nor the e-mail the same alternate juror sent to the Court on April 24 clear the high hurdle set by the controlling authorities and Fed. R. Evid. 606(b) to warrant a post-verdict hearing on juror conduct.

First, there is no indication that the alternate juror has any knowledge about or was involved in the jury's deliberations.   In fact, the juror admits in the voicemail that "I wasn't part of the deliberations."   Thus, any belief (by the alternate or anyone else) about what may have happened in the jury room during deliberations is speculative and without foundation.   Because the alternate was not and could not be involved in deliberations, a hearing would not shed any light on the integrity of the verdict.   In any case, such testimony would be prohibited under Fed. R. Evid. 606(b) because it arguably goes to the "effect of anything on . . . another juror's vote" or "any juror's mental processes concerning the verdict."

Second, the voicemail and e-mail are vague and non-specific.   The alternate juror's unsolicited communications do not indicate that any member of the jury was influenced by outside information or external influences.   They do not indicate that any member of the jury could not or

would not carefully follow the Court's instructions, that any juror had already made up his or mind about the case before deliberations, or that any juror somehow misled the Court and the parties during the voir dire process. They do not indicate that the jury did not fully consider the evidence during deliberations. They do not state that any jurors engaged in premature deliberations. *Cf. Ianniello*, 866 F.2d at 544 (post-verdict hearing required where there were "highly unusual" allegations that district court judge and deputy marshal had ex parte communications with jury that exhorted the jury to reach a decision).

At most, the alternate's voicemail references vague and non-specific "pro-Government statements." But there is no indication that such statements, even if made, were about the evidence itself, or instead about another juror's own opinions generally. And even if such general statements were made in passing during a three-week trial, there is no indication that any juror could not or would not adhere to the Court's instructions during deliberations.

The communications also reference a vague and non-specific sentiment to "fast-track" the decision-making process. Again, however, there is no indication that any juror had made up his or her mind about how they would vote before deliberations. Even if there were a desire by one or more jurors about how they *hoped* the pace of deliberations would proceed, the alternate juror does not—and can not—provide any information about what happened after deliberations did, in fact, begin. This is, after all, a trial in which the jurors were told at the beginning of jury selection that the trial would last until April 30, 2014. This Court instructed the jury that they could take as long as they needed to deliberate, and whatever another juror's hopes for the pace of deliberations had been, those became irrelevant once the jury began deliberating.

Thus, nothing hinted at by the alternate juror's communications is the subject of the narrow

6

exceptions that Congress prescribed could be a basis to investigate jury misconduct.   There is no indication that "extraneous prejudicial information was improperly brought to the jury's attention" or that "an outside influence was improperly brought to bear on any juror."   Fed. R. Evid. 606(b). Nor could the alternate have any information on whether "a mistake was made in entering the verdict on the verdict form," since he did not deliberate.   *See id.*   Absent concrete, non-speculative indicia that something of this magnitude occurred, the Court could properly exercise its discretion to deny the motion.   Indeed, allowing a post-trial hearing to investigate speculation by a non-deliberating alternate juror would only "make what was intended to be a private deliberation, the constant subject of public investigation."   *McDonald*, 238 U.S. at 267-268.   And it is unclear what, if any, information he could provide that would not violate Fed. R. Evid. 606(b).[1]

Finally, the government notes that, although the alternate juror is suggesting or speculating that one or more of the jurors may have developed expectations or views about the trial or deliberations at some point, his own communications reveal that *he* did so as well:   "This jury was just super ignorant in every way possible."; "I threw out little innuendos when we were able to talk."; "I apologize for those jerks."   Moreover, he characterizes the trial as a "debacle and travesty."   Although the alternate is, of course, entitled to his opinion, he should not now complain that 12 of his fellow jurors, who sat through the same trial and heard the same evidence, were not entitled to have their own individually-held views and opinions.   Importantly, though,

---

[1] To the extent that the alternate suggests some sort of possible, undisclosed juror bias, "a party alleging unfairness based on undisclosed juror bias must demonstrate first, that the juror's voir dire response was false and second, that the correct response would have provided a valid basis for a challenge for cause."   *United States v. Stewart*, 433 F.3d 273, 303 (2d Cir. 2005).   Given the vagueness of the alternate juror's communications, however, the defendant cannot meet his burden to substantiate such a claim.

*those* 12 jurors' individually-held views and opinions were expressed, discussed, and challenged in the crucible of deliberations, whereas the alternate did not have the opportunity or benefit of that same process.   He will never know whether his own views about the case and the evidence would have been influenced or changed had he deliberated.   If anything, his post-verdict communications hint that he would not have.   As he told attorney Santos on the voicemail:   "I just wish I was on the jury. . . . I would have stuck it out."

Although the alternate juror may be disappointed in the verdict and/or disappointed he was not able to deliberate, that in and of itself is not a basis to conduct a post-verdict hearing.   To the extent that the alternate had concerns about what his fellow jurors said or did during trial, he could and should have raised them to the Court when they occurred, and not wait until four days after the verdict to reach out to one defendant's counsel.   *See* Local R. 83.5(1)(b).   In fact, the alternate juror agreed to be on stand by during deliberations and was physically present in Court for a full court day, but did not express any of the concerns or issues he is now raising after the verdict has been returned.

Congress contemplated the situation now before the Court.   In enacting Fed. R. Evid. 606(b), Congress expressly contemplated that ex-jurors may be a potential source of improper post-verdict investigation.   Rule 606(b) was designed to prevent "the harassment of former jurors by losing parties as well as the possible exploitation of disgruntled or otherwise badly-motivated ex-jurors."   Senate Report No. 93-1277 (quoted in Advisory Committee Notes for the 1974 Enactment of Rule 606(b)).   "A former juror's sense of having been wronged is ripe for exploitation by a defendant seeking to overturn his conviction."   *United States v. Botti*, 772 F. Supp. 2d 188, 204 (D. Conn. 2010) (Haight, J.).   Because the defendant's motion seeks to exploit

8

the alternate juror's views expressed for the first time after trial, the motion should be denied.

### III. IN LIGHT OF THE ALTERNATE JUROR'S UNSOLICITED E-MAIL TO THE COURT YESTERDAY, THE COURT SHOULD REMIND THE JURORS, INCLUDING THE ALTERNATE JUROR, ABOUT THEIR OBLIGATIONS UNDER LOCAL RULE 83.5.

The alternate juror's e-mail to the Court yesterday specifically sought information about any restrictions he may have before communicating with the media about the trial. *See* Alternate Juror's e-mail to the Court dated April 24, 2014 ("I do want to contact the media in informing them of the debacle and travesty I witnessed as well as writing an editorial letter on this gross juror misconduct. I want to find out if this is legal to do so from Judge Hall first. Can you let me know if this is allowed along with the details of confidentiality I should not be disclosing as well.").

In its response to him sent yesterday afternoon, the Court indicated that nothing within the *oath* he took as a juror prevents him from speaking with the press about *his* jury service. While that may be the case, the government is concerned there is no reference or mention of Local Rule 83.5(1)(b). That rule provides, in pertinent part, that "[j]urors may only speak or write about their *own* participation in the trial. Jurors may *not* discuss the deliberations of the jury, votes of the jury, *or the actions or comments of any other juror*." Local R. 83.5(1)(b) (emphases added). Thus, the alternate juror may be under an impression he can freely discuss *other jurors'* actions or comments, when Local R. 83.5(1)(b) flatly prohibits such conduct.

As discussed above, the Court's local rule is consonant with the prevailing caselaw and the Federal Rules that what occurs in the jury room should stay within the jury room, absent the narrowly-defined exceptions not present here. Otherwise, jury verdicts would rarely, if ever, be final. Accordingly, the government respectfully requests that the Court remind all the jurors, including the alternate juror, about their obligations under Local Rule 83.5.

9

## CONCLUSION

The defendant's motion is rife with speculation about the implications of an alternate juror's post-verdict communications.   Such speculation, however, does not merit a hearing that the courts and Congress have strongly disfavored.   Accordingly, the defendant's motion should be denied.   Moreover, for the same reasons outlined above, the government requests that the Court maintain its order that the parties and their agents are prohibited from contacting the jurors in this case.[2]

Respectfully submitted,

ERIC H. HOLDER, JR.
UNITED STATES ATTORNEY GENERAL

PAUL J. FISHMAN
UNITED STATES ATTORNEY
DISTRICT OF NEW JERSEY


_____/s/_____
DAVID T. HUANG
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT
Federal Bar No. phv07247
157 Church Street
New Haven, CT 06510
Tel.: (203) 821-3700

---

[2] The defendant's motion also references an e-mail sent to co-defendant Jacques Kelly's counsel on April 19, 2014.   *See* Memo. at 4 ¶ 5.   That e-mail, which Kelly's co-counsel provided to the Court and the parties, appears to have been sent through a form on counsel's website.   It reads in its entirety:   "Advice: Pick jurors under age 25.   I witnessed all types of IGNORANCE this month in New Haven."   Although an e-mail address is listed, there is no indication on the e-mail itself about who sent this e-mail, whether the sender is a juror or alternate juror in this case (as opposed to the member of the public), or even if the e-mail is in reference to this case or the trial. Accordingly, for the same reasons above, this anonymous e-mail—which Constantinou admits is "very cryptic"—does not justify a post-verdict inquiry into the jury's deliberations.

JOHN W. McREYNOLDS
SPECIAL ASSISTANT U.S. ATTORNEY
DISTRICT OF CONNECTICUT
1000 Lafayette Blvd., 10th Floor
Bridgeport, CT 06604
Tel.: (203) 696-3000

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2014, a copy of the foregoing GOVERNMENT'S OPPOSITION TO DEFENDANT CONSTANTINOU'S MOTION FOR HEARING ON JURY MISCONDUCT was filed electronically and served by mail on anyone unable to accept electronic filing.   Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.   Parties may access this filing through the Court's CM/ECF System.

_____/s/_____
DAVID T. HUANG
ASSISTANT UNITED STATES ATTORNEY

12