**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CRIMINAL CASE NO. |
| | : | 3:11-CR-192 (JCH) |
| v. | : | |
| | : | |
| ANDREW CONSTANTINOU, | : | SEPTEMBER 2, 2014 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL,
MISTRIAL, AND NEW TRIAL (Doc. No. 569)**

**I.    INTRODUCTION**

On April 18, 2014, defendant Andrew Constantinou was convicted of one count

of conspiracy to commit wire, mail, and/or bank fraud.  Constantinou now moves for a

judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

In the alternative, Constantinou moves for a new trial pursuant to Rule 33.  Defendant's

Motion for Judgment of Acquittal, Mistrial, and New Trial (Doc. No. 569).

For the reasons set forth below, Constantinou's Motion is **DENIED**.

**II.   BACKGROUND**

On February 14, 2013, the grand jury returned a five-count Second Superseding

Indictment against Andrew Constantinou, Genevieve Salvatore, Lawrence Dressler, and

Kwame Nkrumah, and Jacques Kelly.  Second Superseding Indictment (Doc. No. 150).

The Second Superseding Indictment charged Constantinou with conspiracy in violation

of section 1349 of title 18 of the United States Code (Count One).  Id. ¶¶ 12-30.

The Second Superseding Indictment alleged that Constantinou, along with a

number of known and unknown co-conspirators, conspired to unlawfully enrich himself

by obtaining millions of dollars in real estate mortgages through the use of, among other

1

things, materially false loan applications, loan documents, and HUD-1 forms, and to conceal the scheme from others.  Second Superseding Indictment ¶ 13.  Constantinou's alleged role in the conspiracy was to act as the loan officer for multiple fraudulent transactions.  Id. ¶ 20.  In so acting, the Second Superseding Indictment alleged, Constantinou made, or caused to be made, materially false statements in documentation sent to Lenders to assist in obtaining financing to purchase properties. Id.  As further part of the conspiracy, Constantinou allegedly received funds at or shortly after closings that were not disclosed to the Lenders, and referred mortgage applications in the scheme to an unindicted co-conspirator who would act as mortgage broker on the applications and, in some instances, pay kickbacks or referral fees to Constantinou.  Id. ¶¶ 26, 27.

At trial, the government presented the following evidence against Constantinou: (1) a demonstrative showing that Andrew Constantinou was the loan officer for eight fraudulent transactions; (2) testimony from cooperating witnesses Joseph Levitin and Jeffrey Weisman, Constantinou's former supervisor at GMAC Jack Murphy, former GMAC processing department supervisor Carolyn Duffy, lender representatives Lanisa Jenkins and Wendy Tucci, and law enforcement witnesses as to Constantinou's knowledge that each of the fraudulent loans associated with Constantinou were, in fact, fraudulent; (3) fake leases, schedules of real estate owned, and numerous contract addenda  used in the course of the conspiracy; (4) and bank statements showing Constantinou's receipt of kickbacks from unindicted co-conspirator Richard Sabrowske for referring loans related to co-conspirators' purchase of two properties to Sabrowske,

kickbacks that were funneled through Constantinou's daughter's bank account and the account of a shell company Constantinou controlled.

On April 10, 2014, at the close of the government's case, Constantinou moved for a judgment of acquittal pursuant to Rule 29(a).  Oral Motion for Judgment of Acquittal (Doc. No. 492).  The court denied the Motion.  Minute Entry (Doc. No. 496).  On April 18, 2014, the jury returned a verdict of guilty on Count One against Constantinou.  Jury Verdict (Doc. No. 511).  Following the jury's verdict, Constantinou filed the instant post-trial Motions.

III.   **DISCUSSION**

    A.  <u>Motion for Judgment of Acquittal</u>

       1.  Standard of Review

Rule 29 requires the court, upon motion by the defendant, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  However, in challenging the sufficiency of the evidence supporting his conviction, "the defendant faces an uphill battle, and bears a very heavy burden."  <u>United States v. Mi Sun Cho</u>, 713 F.3d 716, 720 (2d Cir. 2013) (citation and internal quotation marks omitted).  In deciding such a motion, the court must view the evidence in the light most favorable to the government, draw all inferences in favor of the government, and defer to the jury's assessment of the witnesses' credibility.  <u>United States v. Hawkins</u>, 547 F.3d 66, 70 (2d Cir. 2008).  The jury verdict should stand so long as "<u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Mi Sun Cho</u>, 713 F.3d at 720 (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)).  In deciding a Rule 29 motion, "the evidence must be viewed in its totality, as each fact may gain color from others," and the court must exercise care

3

not to substitute its determination of the weight of the evidence, and of the reasonable inferences to be drawn therefrom, for that of the jury.  United States v. Cassese, 428 F.3d 92, 98-99 (2d Cir. 2005).

      2.  Conspiracy

To convict Constantinou of the crime of conspiracy charged in Count One, the jury had to find that the government had proven beyond a reasonable doubt the following two elements:

> (1) That two or more persons entered into the unlawful agreement charged in the Indictment;
>
> (2) That [Constantinou] knowingly and willfully became a member of the conspiracy, with a specific intent to commit wire fraud, mail fraud, and/or bank fraud.

Jury Charge (Doc. No. 589) at 43; see 18 U.S.C. § 1349; see also United States v. Albers, No. 08-CR-819, 2011 WL 1225548, at *1 (E.D.N.Y. Mar. 31, 2011).  "To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowing joined and participated in it."  U.S. v. Lorenzo, 534 F.3d 153, 159 (2d Cir. 2008) (internal quotation marks omitted).  "[O]nce a conspiracy is shown to exist, the evidence sufficient to link another defendant to it need not be overwhelming. . . .  But suspicious circumstances . . . are not enough to sustain a conviction for conspiracy . . . and mere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement."  Id. (internal quotation marks and citations omitted).  A defendant's "mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in the

conspiracy even if the defendant has knowledge of the conspiracy." Id. at 159-60 (internal quotation marks omitted).

Constantinou contests the verdict on the grounds that the government failed to establish beyond a reasonable doubt that he possessed the requisite intent to be convicted of conspiracy to commit mail fraud, wire fraud, or bank fraud.  Defendant's Memorandum of Law in Support of Motion for Judgment of Acquittal and New Trial ("Def.'s Mem.") (Doc. No. 569-1) at 4.  He identifies the following deficiencies in the government's proof in support of the verdict.  First, Constantinou asserts that Levitin's testimony regarding Constantinou's knowledge of and participation in the conspiracy was not credible because neither Levitin nor the government offered corroboration for Levitin's claims that he faxed Constantinou leases and contract addenda, and because aspects of Levitin's testimony were contradicted by Constantinou's own testimony, other defense witness testimony, and defense exhibits.  Def.'s Mem. at 5-7.  Second, Constantinou notes that most of the loan applications submitted by the government as proof of Constantinou's participation in the conspiracy were not prepared or signed by Constantinou.  Id. at 7-8.  Third, Constantinou argues that later changes to information in loan applications were typical of the process, that he always gave borrowers a lower income on the applications because the incomes were usually based on borrower estimates, and that the nature of the loan application process made deliberate falsification of information in a loan application, without also providing false documents in support of that falsification, easily discoverable.  Id. at 8-9.

Constantinou's challenge here strikes the court as not so much a challenge to the sufficiency of the evidence as to how the jury chose to interpret the evidence before

it.  As such, it cannot meet Rule 29's strict requirement that judgment of acquittal be granted only when "the evidence that the defendant committed the crime alleged [was] nonexistent or . . . meager."  U.S. v. Chen, 378 F.3d 151, 159 (2d Cir. 2004) (internal quotation marks omitted).  The jury could rationally credit Levitin's testimony without any corroboration of its details; as the Second Circuit has repeatedly explained, "the government's failure to corroborate a witness's testimony raises a question as to the weight a jury might choose to give that testimony, not its legal sufficiency to support a conviction."  U.S. v. Florez, 447 F.3d 145, 155 (2d Cir. 2006).  The jury was also entitled to discount those aspects of other witnesses' testimony, including Constantinou's, that contradicted Levitin's account.  See U.S. v. Tocco, 135 F.3d 116, 123 (2d Cir. 1998) ("We defer to the jury's resolution of witness credibility and, where there is conflicting testimony, to its selection between competing inferences.").

Though documentary evidence in the record suggested that Constantinou was not present at the closing of 270 Davenport, contrary to Levitin's testimony that he was present, such evidence did not conclusively establish Constantinou's absence at the closing.  Nor did evidence that Levitin did not always get the appraised value he wanted from appraisers, despite his claim that he was able to influence the assigned appraisers to enhance the fair market value of the properties at issue, prove that Levitin never got the appraised value he sought.  Thus, the court cannot conclude that Levitin's testimony was incredible as a matter of law, such that no reasonable jury could have credited Levitin's overall testimony based on the existence of such evidence in the record.  See U.S. v. Truman, 688 F.3d 129, 139-40 (2d Cir. 2012) (reversing grant of acquittal pursuant to Rule 29 where a witness's credibility, while impaired, did not render his

6

testimony incredible as a matter of law).  That most of the loan applications offered by

the government as evidence of Constantinou's involvement in the conspiracy were not

prepared or signed by Constantinou specifically is also no argument against

Constantinou's culpability for those applications he did prepare, or against his joint

liability for the unlawful acts of his co-conspirators taken in furtherance of the

conspiracy.  Lastly, Constantinou's arguments regarding how the loan application

process worked, and how that process disincentivized falsification of loan applications,

were presented to the jury.  See Apr. 17, 2014 Trial Transcript ("Trial Tr.") (Doc. No.

565) at 2039:24-25, 2040:1-13, 2049:2.  The jury evidently found these arguments

unpersuasive.  The jury's decision not to credit a defendant's case theory does not bear

on whether the evidence to convict Constantinou was sufficient, and thus does not

provide a basis for acquittal.

Furthermore, the government's evidence of Constantinou's conspiratorial intent

did not rest solely upon Levitin's testimony.  The government also offered testimony

from Jeffrey Weisman, a charged co-conspirator, that Constantinou acted as the

mortgage broker in some of the fraudulent transactions in which Weisman was involved;

testimony from his former supervisors at GMAC that Constantinou's loan files were

referred to GMAC's fraud department during the time period relevant to the conspiracy,

and that Constantinou resigned after being notified that any loans he originated would

be audited for an indefinite amount of time; and testimony from an FBI forensic

accountant explaining documentary evidence, which was also offered to the jury, that

showed that Constantinou received money from an unindicted co-conspirator, funneled

through his daughter's bank account or through the account of a shell company

controlled by Constantinou, in exchange for referring loans to him.  Viewed in the light most favorable the government, the court determines that the government's evidence, taken as a whole, was sufficient to support the jury's verdict against Constantinou.  The court thus denies Constantinou's Motion for Acquittal.

      B.  <u>Motion for New Trial</u>

        1.  Standard of Review

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, Constantinou moves the court, in the alternative, for a new trial.  Under Rule 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. Pro. 33(a).  A district court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'"  <u>United States v. Ferguson</u>, 246 F.3d 129, 134 (2d Cir.2001) (quoting <u>United States v. Sanchez</u>, 969 F.2d 1409, 1414 (2d Cir.1992)).  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice."  <u>Id.</u>  In exercising its discretion, the court may weigh the evidence and credibility of witnesses.  <u>Autuori</u>, 212 F.3d at 120.  However, the court may not "wholly usurp" the jury's role, <u>id.</u>, and should defer to the jury's assessment of witnesses and resolution of conflicting evidence unless "exceptional circumstances can be demonstrated."  <u>Ferguson</u>, 246 F.3d at 134.

        2.  Grounds for New Trial

Constantinou has moved for retrial on a number of grounds, all of which are ultimately unpersuasive.

a. Denial of Motion to Sever

Constantinou first argues for a new trial on the grounds that this court's denial of his repeated motions to sever was unfairly prejudicial. Def.'s Mem. at 10. Constantinou contends, as he did prior to and during the trial, that his defense was antagonistic to Kelly's—i.e., that, because he maintained that the false information in mortgage applications he prepared was attributable to borrowers who lied to him, while Kelly claimed that he was taken advantage of by Constantinou and others, a jury persuaded by Kelly's defense would, of necessity, have to find Constantinou guilty, and vice versa. Id. at 11-12. Constantinou also argues, for the first time, that severance was required because the conscious avoidance charge provided for in the court's jury instructions applied only to Kelly. Id. at 12-13. Neither argument provides a persuasive basis for severance.

Rule 14(a) of the Federal Rules of Criminal Procedure commits the decision to sever to the discretion of the court: "If joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a); see also United States v. Spinelli, 352 F.3d 48, 54 (2d Cir. 2003). A court should sever only if there is a serious risk that "a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). To succeed on a motion for severance, a defendant must show "substantial prejudice," United States v. Sampson, 385 F.3d 183, 190 (2d Cir. 2004), that is, prejudice "sufficiently severe to

9

outweigh the judicial economy that would be realized by avoiding multiple lengthy trials."
United States v. Walker, 142 F.3d 103, 110 (2d Cir. 1998).  The mere existence of an
antagonistic defense does not create the risk of substantial prejudice; "[i]nstead, the
defenses must conflict to the point of being so irreconcilable as to be mutually exclusive
. . . [that is,] if, in order to accept the defense of one defendant, the jury must of
necessity convict a second defendant."  United States v. Cardascia, 951 F.2d 474, 484
(2d Cir. 1991) (internal citations omitted).

The respective defenses of Constantinou and Kelly were not so in conflict as to
be mutually exclusive.  Kelly's defense merely laid blame at a category of persons that
could, but did not have to, include Constantinou—i.e., others involved in the conspiracy
who Kelly claimed took advantage of him.  Similarly, Constantinou in his defense simply
disavowed knowledge of any false statements in the mortgage applications at issue,
and disclaimed responsibility for detecting any such statements.  The jury could have
believed Kelly's defense while also believing that Constantinou was not involved in the
conspiracy and thus did not act to take advantage of Kelly; similarly, the jury could have
believed Constantinou's defense while also believing that Kelly did not knowingly supply
false information to Constantinou.  The jury instead chose to believe neither defense,
not, the court notes, because Constantinou's and Kelly's defenses made it impossible
for it to choose otherwise, but because it found neither defense persuasive on its own
terms.

The court finds no merit in Constantinou's argument for severance on the
grounds that the conscious avoidance instruction did not properly apply to him.  As

discussed in detail below, the court's charge on conscious avoidance was both lawful and appropriately given against Constantinou.

    b.    Voir Dire

Constantinou further asserts that his trial was fundamentally unfair because the court's voir dire questioning was inadequate and improper, resulting in the selection of a juror who falsely claimed a lack of bias towards law enforcement during voir dire.  Def.'s Mem. at 14-20.  Constantinou contends that this juror's bias poisoned and prejudiced the jury against him.  Id. at 19-20.  Constantinou specifically takes issue with the following from the court's questioning of the panel regarding potential biases towards law enforcement:

> So it would be wrong, for example, for you to say, "Oh, that person is in law enforcement. I'm going to believe that person." Or to do the opposite, "That person is in law enforcement, I'm not going to believe a thing he says." Both of those would be wrong. . . .
>
> Is there anyone who feels they would be unable to judge the testimony of someone who identifies themselves as being in law enforcement, that you would be unable to treat and analyze and decide that whether you believe that testimony or not in the same way you approach another witness's testimony? Anybody who would have a hesitancy about that? No.

March 31, 2014 Trial Tr. (Doc. No. 562) at 125:24-25—126:1-3, 126:9-15.  He insists that such questioning was unfair and improper because it "would never elicit a truthful response" and because "certain members of the venire, and ultimately the jury, were clearly biased towards law enforcement . . . [but] plainly were afraid to reveal their personal biases since the [c]ourt had, in the same breath, told them it would be improper for them to harbor those feelings."  Def.'s Mem. at 15.

The court notes at the outset that Constantinou made no objection to the above questioning during voir dire.  Nor did he request further questioning of the venire on their biases towards law enforcement.  At close of jury questioning, Constantinou, in fact, represented that the selected jury was acceptable to him.  Mar. 31, 2014 Trial Tr. at 215:10-13.  In addition, throughout voir dire, the court made clear to the jury pool and counsel that any personal concerns potential jurors had regarding their ability to serve could be addressed during individual follow-ups at sidebar.  Id. at 38:5-13 (explaining to jury pool that follow-up questions might be asked at sidebar); id. at 209:25—210:1 (inviting counsel to discuss any further issues before taking strikes).  Counsel was present at all sidebars with prospective jurors.

As for the questioning at issue, the court finds nothing in its comments or in its conduct of voir dire that suggest that any juror was, or reasonably would have been, "plainly . . . afraid to reveal [his or her] personal biases . . . ."  Constantinou has offered no evidence that any juror was intimidated by the court's statements.  He has instead raised this belated challenge to the court's voir dire because of an alternate juror's allegation that a juror said, during the trial, "you can't go wrong with the FBI."  The court previously considered these allegations, as well as others from the alternate juror of potential jury misconduct, in its Ruling denying Constantinou's Motion for Hearing on Jury Misconduct.  Ruling Re: Motions for Hearing on Jury Misconduct (Doc. No. 541).  It found there that the comment did not clearly evince that the jury was tainted by pro-law enforcement bias.  Id. at 21-22.  Constantinou has provided nothing in his Motion here that undermines this prior finding.  Thus, this alleged comment cannot support a finding that any member of the jury was biased in favor of law enforcement, let alone that the

12

court's voir dire was directly responsible for the inclusion of a juror partial to law enforcement in Constantinou's jury.  Constantinou's Motion for a New Trial cannot be granted on this basis.

### c.   Jury Misconduct and Post-Trial Jury Inquiry

As an additional basis for a new trial, Constantinou argues that he was prejudiced by jury misconduct in the form of premature deliberations and the jury's imposition on itself of an artificial deadline for reaching a verdict.  Def.'s Mem. at 21-26. Constantinou previously raised a similar challenge in his Motion for Hearing on Jury Misconduct, which, as noted above, was denied.  Ruling Re: Motions for Hearing on Jury Misconduct.  Constantinou contends that the denial of his Motion was an abuse of discretion.  Def.'s Mem. at 26-34.  Finding that Constantinou has offered no new evidence for his claim that jury misconduct occurred during his trial, and no persuasive argument for why the court should revisit its previous Ruling on the matter, the court declines to reconsider the prior Ruling here.

### d.   Local Rule 83.5

Constantinou charges that Local Rule 83.5, which prohibits any party or attorney for a party from contacting a juror post-trial concerning deliberations, votes, actions, or comments of the jury, violated his Sixth Amendment right to a fair and impartial jury trial. Def.'s Mem. at 34-35.  According to Constantinou, Local Rule 83.5 severely restricted his right to impeach an unconstitutional verdict because it prevented his attorneys from investigating whether bias had influenced the jury's deliberations and thus impeded his attorneys' ability to collect evidence that the verdict was tainted by bias.  Id.

The court does not find that Local Rule 83.5 placed unconstitutional limits on Constantinou's right to a fair and impartial jury trial.  The Supreme Court has long recognized the finality of jury verdicts and the protection of jurors from post-verdict harassment as interests of the public that must be balanced with the trial rights of defendants.  See McDonald v. Pless, 238 U.S. 264, 267 (1915); Tanner v. U.S., 483 U.S. 107, 120-21, 127 (1987).  Constantinou contends that his constitutional rights as a criminal defendant outweigh these public interests.  Def.'s Mem. at 37.  The Court, however, has found that a defendant's Sixth Amendment rights are protected by several aspects of the trial process, such that concern for protection of a defendant's trial rights does not, by necessity, prevail over the "long-recognized and very substantial concerns support[ing] the protection of jury deliberations from intrusive inquiry."  Tanner, 483 U.S. at 127.

While a defendant has a right to challenge an unconstitutional verdict, the means available to him for doing so are not limitless.  As the court's Ruling on Constantinou's Motion for Hearing on Jury Misconduct discussed in great detail, post-trial inquiry into jury verdicts is generally disfavored, and "justified only when reasonable grounds for investigation exist, in other words, where this is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial."  U.S. v. Stewart, 433 F.3d 273, 302-03 (2d Cir. 2006) (internal citation marks omitted).  Constantinou insists that Local Rule 83.5 placed him in a bind by preventing him from obtaining the "clear, strong, substantial and incontrovertible evidence" needed to justify a post-trial hearing on the alternate juror's allegations of jury misconduct.  Def.'s Mem. at 36-37.  The suggestion that vindication of

14

Constantinou's constitutional rights required that he be permitted to interview an alternate juror for the purpose of determining whether grounds for post-verdict inquiry actually existed strikes the court as contrary to the prevailing  wisdom, in this Circuit and most others, that a defendant is not allowed to engage in a post-verdict jury investigation "merely to conduct a fishing expedition," U.S. v. Moten, 582 F.2d 654, 667 (2d Cir. 1978), and that when post-trial inquiry is merited by strong evidence of jury impropriety, the conduct of such investigation remains at the discretion of the trial judge, U.S. v. Peterson, 385 F.3d 127, 134 (2d Cir. 2004).  Local Rule 83.5's bar on post-trial jury contact by counsel and parties is consistent with these limitations.  The court thus has no basis to conclude that Local Rule 83.5 is unconstitutional, and Constantinou's Motion for a New Trial on this ground must fail.

      e.  Jury charge

Constantinou argues that a new trial is necessary because the court improperly included a conscious avoidance charge within its Jury Instructions.  Def.'s Mem. at 41. Constantinou asserts that this inclusion was unlawful and prejudicial because: 1) the court mistakenly charged the jury on conscious avoidance for his knowledge in joining the conspiracy, rather than for his knowledge of the unlawful objects of the conspiracy, as was proper; 2) there was no factual predicate for charging the jury on conscious avoidance at all; and 3) the conscious avoidance charge unconstitutionally diluted the government's burden of proving his intent to participate in the conspiracy.  Id. at 41, 43, 47.

A defendant challenging a jury instruction must demonstrate that (1) he requested a charge that "accurately represented the law in every respect" and (2) the

charge delivered was erroneous and prejudicial.  United States v. Applins, 637 F.3d 59, 72 (2d Cir. 2011) (internal citation marks omitted).  "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Id. (internal citation marks omitted).  At trial, Constantinou objected to instructing the jury on conscious avoidance on the grounds that such an instruction was fundamentally unfair and that there was no factual predicate for giving it.  Once the court determined that it was appropriate to charge the jury on conscious avoidance for Constantinou, Constantinou did not offer his own instructions on conscious avoidance or propose changes to the court's draft instructions.  Thus, even if the conscious avoidance charge given by the court was erroneous, Constantinou does not appear to have met his burden here in showing that he requested an accurate and lawful charge that the court wrongfully rejected.

The court, however, does not find substantive merit in Constantinou's challenges to the jury instructions. Constantinou contends that the following language in the court's charge was improper:

> The government can prove that a defendant acted knowingly in either of two ways.  First, it is sufficient, of course, if the evidence satisfies you beyond a reasonable doubt that a defendant was actually aware that he was joining the illegal conspiracy.  Alternatively, a defendant's knowledge may be established by proof that he was aware of a high probability that he was joining the illegal conspiracy and that, despite this high probability, he deliberately and consciously avoided confirming that he was joining such a conspiracy, unless the facts show that he actually believed that he was not joining an illegal conspiracy.  This guilty knowledge, however, cannot be proved by demonstrating mere negligence or foolishness on a defendant's part.

Jury Charge at 49.  The court can find no legal error in this charge.  First, there are two aspects of the joinder element of conspiracy: 1) the defendant's knowledge or awareness of the illegal nature of the charged activity, and 2) the defendant's intent to advance the illegal objective.  U.S. v. Svoboda, 347 F.3d 471, 479 (2d Cir. 2003).  While conscious avoidance cannot be used to prove the latter aspect—that is, that a defendant joined in the conspiracy with the intent of advancing its illegal objectives—it can be used to prove that the defendant joined in the conspiracy with knowledge or awareness of the illegal nature of the conspiracy's objectives.  Id.  (holding that while conscious avoidance cannot prove a defendant's intent to advance the illegal objective of a conspiracy, a factfinder can rely on conscious avoidance "to satisfy at least the knowledge component of intent to participate in a conspiracy," i.e., a defendant's "knowledge or awareness of the illegal nature of the charged activity").  A further showing is required to prove that a defendant intended to help a conspiracy succeed in its criminal purpose, but the government may prove that the defendant joined the conspiracy knowing of its illegal nature by showing that the defendant consciously avoided learning of the conspiracy's illegality while aware of a high probability that it was illegal.  The court's conscious avoidance charge applied only to whether Constantinou knew, or was aware of, the conspiracy's illegal nature, not to whether Constantinou joined the conspiracy with the intent to advance its illegal objectives,[1] and thus was consistent with the law in this Circuit.

---

[1] The court's instructions on the other aspect of the joinder element in conspiracy—intent to advance the conspiracy's illegal objectives—informed that jury that

> [a] person willfully joins a conspiracy the conspiracy with knowledge that his conduct is unlawful and with the intent to do

Second, Constantinou's assertion that "[i]f there is evidence showing 'actual knowledge,' then there is not factual predicate for conscious avoidance," Def.'s Mem. at 43, is a misstatement of the current law.  U.S. v. Kaplan, 490 F.3d 110 (2d Cir. 2007), which Constantinou cites in support of this assertion, in fact rejects the argument that conscious avoidance is mutually exclusive with actual knowledge; as the Second Circuit noted, "a conscious avoidance charge is not inappropriate merely because the government has primarily attempted to prove that the defendant had actual knowledge . . . .  So long as the Government can establish a factual predicate for conscious avoidance, it is free to argue alternative theories of conscious avoidance and actual knowledge." Kaplan, 490 F.3d at 128 n.7 (internal quotation marks and citation omitted).  The government, then, was under no obligation to choose between actual knowledge and conscious avoidance theories of Constantinou's involvement in the charged conspiracy, and the court could instruct the jury on conscious avoidance, even though the government's principal theory was actual knowledge, as long as a factual predicate for the charge existed.

Constantinou is also incorrect in claiming that no factual predicate for the conscious avoidance charge existed.  "The factual predicate for a conscious avoidance charge is that the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." U.S. v. Nektalov, 461 F.3d

---

something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

 A person's conduct is not "willful" it if is done because of negligence, inadvertence, or mistake.

Jury Charge at 49.

309, 316 (2d Cir. 2006) (internal quotation marks omitted).  At trial, the jury heard evidence that Constantinou was told about vacant apartments that he received leases for from Levitin; that Constantinou was present at co-defendant Kelly's closings when co-defendant Salvatore openly gave checks to Kelly; that Constantinou was informed about discrepancies in the HUD-1s created for these same closings; that Constantinou's files were referred to GMAC's fraud department based on suspicious patterns across the files; and that Constantinou was an experienced and knowledgeable loan officer. Such evidence provided a sufficient factual predicate for instructing the jury on conscious avoidance against Constantinou.  See U.S. v. Ferguson, 676 F.3d 260, 278 (2d Cir. 2011) ("Red flags about the legitimacy of a transaction can be used to show both actual knowledge and conscious avoidance.").

Third, Constantinou's suggestion that a conscious avoidance charge requires an instruction that a defendant took deliberate actions to avoid learning critical facts or could be said to have actually known the critical facts, Def.'s Mem. at 47-48, is contrary to the law in this Circuit.  The Second Circuit has recently held that Global-Tech Appliances, Inc. v. SEB, S.A., 131 S.Ct. 2060 (2011), which Constantinou cites for this suggestion, did not alter the conscious avoidance doctrine to require that a defendant take "deliberate actions" to consciously avoid learning key information.  See U.S. v. Whitman, 555 Fed.Appx. 98, 105 (2d Cir. 2014) (summary order); U.S. v. Lewis, 545 Fed.Appx. 9, 10-11 (2d Cir. 2013) (summary order).  Further, to the extent that Global-Tech did change the conscious avoidance standard, the court's instruction that a person must have "deliberately and consciously avoided confirming that he was joining" a conspiracy, Jury Charge at 49, is consistent with this change.  See U.S. v. Goffer, 721

F.3d 113, 128, 128 n.11 (2d Cir. 2013) (finding charge that, if jury found "that the defendant you are considering was aware that there was a high probability that he obtained information that had been disclosed in violation of a duty of trust and confidential [sic] but deliberately and consciously avoided confirming this fact, then you may find that the defendant acted knowingly" proper under Global-Tech).

Constantinou's challenges to the court's instructions on conscious avoidance are thus without merit and cannot provide a basis for granting Constantinou a new trial.

     f.   Jury Questions during Deliberations

Lastly, Constantinou claims that the court's decision not to provide counsel with a question from the jury during deliberations before attempting to answer the question was improper and prejudicial.  Def.'s Mem. at 49.

During deliberations, the jury sent the following note to the court:

> We need additional explanation of Count One – Second Element.
>
> This would be in reference to being more specific "being a conspirator, you must find that he knowingly and willfully joined the unlawful agreement or plan."
>
> "Joined" is that the start or at some point knew during the conspiracy.

Ct. Ex. 1.  An excerpt from the jury charge regarding the second element of conspiracy was attached to the note.  Following receipt of the note, the court reconvened; provided the parties with a copy of the note; read the note into the record; requested from parties their position on how the court should respond, including how they believed the court should address ambiguities in the note; discussed what it believed the note meant; and informed parties of its planned response.  In the course of addressing the note, the

court sent the jury a note requesting clarification of its ambiguous language.  The court then decided that having the jury clarify its note was not the best course to take, and had the jury brought back in.

Upon the jury's return, the courtroom deputy handed the undersigned a second note the jury had written at some point after the first note.  The second note read:

> ? Knowingly & willfully joined conspiracy – knew from 1st encounter or "down the line." Does realizing at some point, it is a conspiracy & continuing constitute "joined" conspiracy.

Ct. Ex. 3.  The court read into the record the first note to the jury, the court's request for clarification, and the jury's second note.  The court then provided the response it had prepared for the first note to the jury, and instructed the jury that if the court's answer was not appropriately responsive to the jury's questions, it should let the court know. Defendants objected to the court's response after the jury had left the courtroom, and moved for a mistrial, which was denied.

The Second Circuit has outlined the following procedure for addressing jury inquiries raised in the course of deliberations:

> (1) The jury's inquiry should be submitted in writing. . . .(2) Before the jury is recalled, the note should be marked as a court exhibit and be read into the record in the presence of counsel and the defendant. . . . (3) Counsel should be afforded an opportunity to suggest appropriate responses. During this colloquy, it is also helpful for the judge to inform counsel of the substance of his proposed response, or even to furnish a written text of it, if available. . . . (4) After the jury is recalled, the trial judge should generally precede his response by reading into the record in their presence the content of any note concerning substantive inquiries.

U.S. v. Ronder, 639 F.2d 931, 934 (2d Cir. 1981).  A trial court need not precisely

adhere to this procedure, however; only "substantial compliance" with Ronder is

required.  U.S. v. Ulloa, 882 F.2d 41, 45 (2d Cir. 1989).

    The court's failure to discuss the second note with counsel before attempting to

answer it was neither improper under Ronder nor so prejudicial as to rise to the level of

manifest injustice.  Where counsel has "previously been afforded adequate opportunity

to comment on the matters on which the jury [is] seeking further guidance," the Second

Circuit has found that a trial judge's decision to respond to questions from the jury

without first seeking suggested responses substantially complies with Ronder.  See id.

The jury's second note, written in an apparent attempt to clarify its first note per the

court's request, concerned substantively the same subject as the first note, to which all

parties had been given an opportunity to propose a response.  Constantinou's

objections to the court's answer to the jury after the second note had been read into the

record were also, notably, substantively the same as those he raised during colloquy on

the first note.  Compare April 18, 2014 Trial Tr. (Doc. No. 566) at 2176:12-23 with id. at

2186:9-21.  Thus, Constantinou was not deprived on an opportunity to address the

matters at issue in the second note before the court offered its response.

    The similarity of the two notes and Constantinou's objections to both additionally

reveal that Constantinou was not prejudiced by the court's decision to respond to the

first note, as the second note was received without additional colloquy with the

attorneys.  Constantinou contends that he was prejudiced by the court's

misinterpretation of both of the jury's notes.  Def.'s Mem. at 53-55.  The nature of this

apparent misinterpretation, however, was not one of legal error; rather, Constantinou

understood the notes to concern requisite intent while the court and government understood both notes to concern temporality.  Constantinou, in fact, takes no issue with the legal soundness of the answer the court provided.

The court disagrees now, as it did at trial, that the jury's notes concerned the level of intent required to join a conspiracy.  Further, it bears noting that, in the course of responding to the jury's notes, the court directed the jury to its instructions on intent and instructed the jury to notify the court if the court's answer did not fully or correctly address its questions.  That the jury asked no additional questions following the court's response runs counter to Constantinou's insistence that the jury "was struggling to understand the level of knowledge required for a guilty verdict," and that the court's response "likely added to" the jury's confusion.  Def.'s Mem. at 54-55.  The court cannot conclude that it would have instructed the jury differently, or that the jury would have reached a different outcome, had the court hewed to the Ronder protocol in responding to the second note, and thus does not find that Constantinou was prejudiced by its failure to do so.

Because Constantinou has provided no basis for the court to find that his guilty verdict was the result of a manifest injustice at trial, his Motion for New Trial must be denied.

## IV.    CONCLUSION

For the reasons set forth above, the court **DENIES** Constantinou's Motion for Judgment of Acquittal, Mistrial, and New Trial (Doc. No. 569).

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of September, 2014.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge